**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Joel Marvin Munt, | Case No. 18-cv-2144 (SRN/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tom Roy, Eddie Miles, Victor Wanchena, Chris Pawelk, Mike Warner, Susan Norton, Lisa Cox, and Steven Hammer, *in their individual and official capacities* | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Dismiss, (ECF No. 24), Defendant Hammer's Motion to Dismiss or to Amend the Caption, (ECF No. 32), and Plaintiff Joel Marvin Munt's Request for Stay, (ECF No. 42). This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends Defendants' motions be granted, Munt's motion be denied, and this matter be dismissed with prejudice.

### I.   BACKGROUND

Munt, who is incarcerated at the Minnesota Correctional Facility in Oak Park Heights ("MCF-OPH"), filed suit on July 25, 2018 under 42 U.S.C. § 1983. (Compl., ECF No. 1). Munt claims Defendants placed him in segregation and transferred him out of MCF-OPH out of retaliation for an affidavit Munt authored. Munt further claims Defendants

violated his constitutional right of access to the courts by restricting his access to legal resources and the law library.

On his retaliatory discipline claim, Munt alleges he was placed in segregation at Minnesota Correctional Facility, Stillwater ("MCF-STW") on March 1, 2018, released on March 2, and then re-placed in segregation that same day until March 9, 2019. (Compl., at 11). Munt asserts that "[a]t no time was I given any paperwork nor was any verbal justification given for my being in Seg[regation]." (Compl., at 11). Munt alleges he did not know why he was in segregation and "had to infer from the hours that I received exercise that it was not disciplinary seg[regation]. . . ." (Compl., at 12). Munt claims he wrote Defendant Warner, a lieutenant at MCF-STW, about being in segregation without any charges and then wrote Defendant Wanchena about being held in segregation without any paperwork. (Compl., at 11). Munt states his "kites requesting an explanation were ignored." (Compl., at 11).

Munt, citing an affidavit authored by Defendant Norton, asserts Defendant Norton admitted to reviewing Munt's confiscated affidavit, writing an incident report, and recommending his detention. (Compl., at 13). Munt claims Defendant Norton "recommended the DOC take actions that were facial retaliation." (Compl., at 13). Munt states he "wrote the disciplinary chain of command in case it was disciplinary Seg[regation] . . . [and] also followed DOC Policy 301.085(a) in case it was administrative Seg." (Compl., at 13). Munt claims MCF-STW and the Central Office refused to process his grievance. (Compl., at 13). Munt alleges he was transferred to MCF-OPH on March 9, 2019 out of retaliation. (Compl., at 14). Munt states "the State admitted [to] taking the

2

affidavit and admitted the affidavit as having been the reason they put me in Seg[regation] and why they transferred me." (Compl., at 14).

Munt claims "Defendants Miles, Wanchena and Norton are responsible for intentionally retaliating against my exercise of my privilege of habeas corpus, right to petition the government for redress and right to meaningful access to the courts." (Compl., at 16). Munt asserts Defendant Norton "admits to being behind this [retaliatory segregation]" and that "Defendants Warner, Wanchena and Miles were aware of this and chose not to respond to it at all." (Compl., at 17). Munt alleges "Defendants Miles and Pawelk are liable for the transfer [and] Defendant[s] Norton and Cox also bear some measure of responsibility for it." (Compl., at 19).

On his access to the courts claim, Munt claims he did not receive copies in a timely manner. Munt asserts he "sent 3 separate copy requests" to a staff member, which included Munt's affidavit, supplemental citations for a state habeas petition, and kite communications for a grievance form. (Compl., at 10). Munt states he "wrote multiple kites trying to find out where my copies were [because] in the past copies only took 1 or 2 days" and that Defendant Wanchena, an associate warden at MCF-STW, did not respond to his inquiry about where his copies were. (Compl., at 10). Munt alleges Warden Eddie Miles later admitted to taking Munt's affidavit. (Compl., at 11). Munt claims MCF-STW refused to process his grievance and ignored that he "was not allowed envelopes as well as [delayed] staff response times." (Compl., at 11).

Munt also asserts that while in segregation, he did not have envelopes, legal materials or his address book; that he was denied access to the law library; and that he had

no access to his acid reflux and allergy medication. (Compl., at 12). He alleges he received his copy requests uncopied and without his affidavit on either March 7 or March 8 of 2018. (Compl., at 12). He claims his kite chains were copied two months after the requests were made on April 17, 2018. (Compl., at 12).

Munt claims he did not receive his property until March 19, 2018 and was not permitted to go to the law library or receive envelopes until March 20, 2018. (Compl., at 14). He states his property "had been loosely packed [and] that all of my years of organized research was gone . . . ." (Compl., at 14). Munt asserts Defendant Lisa Cox admitted that she packed Munt's property for the transfer. (Compl., at 14).

Munt requests wide-ranging relief. This includes declaratory relief, compensatory damages, punitive damages, repayment of alleged costs, and broad injunctive relief. (Compl., at 20–35). The Court does not find it relevant to the Court's analysis to detail the multitude of specific requests for relief Munt makes to the Court.

## II.     MOTION TO DISMISS

### A.     Legal Standard

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell*

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a complaint need not be detailed to be sufficient, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quotations and citation omitted)). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking

5

the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.   Analysis

The Court finds Munt's claims fail under Rule 12(b)(6). His retaliatory discipline claim is not plausible because there is no evidence showing that Defendants moved Munt into segregation and transferred him purely out of a retaliatory motive. Munt fails to state an access to the courts claim because he has not alleged or demonstrated an actual injury related to his restricted access to legal resources or loss of legal materials.

#### 1.   Retaliation Claim

Munt's retaliation claim is based on two actions: moving him into segregation and transferring him from MCF-STW to MCF-OPH. Munt alleges he was placed in segregation and transferred in retaliation for an affidavit he authored. (Compl., at 12–15). The Court finds Munt's retaliation claims should be dismissed for failure to state a claim.

"Generally, prisoners have no constitutional right to remain in a particular institution." *Rentschler v. Kaiser*, 72 F.3d 133, at *2 (8th Cir. 1995) (table). To establish a prima facie case of retaliatory discipline, the plaintiff must show that: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephensen*, 588 F.3d 1152, 1155 (8th Cir. 2009). The third element requires proof of "but-for" causation: "[t]o establish the third element of the prima facie case for retaliatory discipline . . . an inmate must show that but for a retaliatory motive the prison official would not have filed the disciplinary report." *Id.* at 1156. Furthermore, "allegations of

6

retaliation must be more than speculative and conclusory." *Halfacre v. Cruseturner*, 299 F. App'x 609, at *1 (8th Cir. 2008).

The Court does not find a constitutional right for Munt to remain at MCF-STW. *See Rentschle*, 72 F.3d at *2. Nevertheless, the Court will analyze whether Munt's placement in segregation and transfer from MCF-STW satisfies the elements of a retaliatory discipline claim. The first two elements are present. While asking for an affidavit to be copied is not a constitutionally protected right, Munt was going to use his affidavit to initiate a lawsuit. The filing of an inmate lawsuit is a protected First Amendment activity. *Haynes*, 588 F.3d at 1155–56. Munt also alleges he was disciplined in the form of being placed in segregation for some period of time and was transferred from MCF-STW to MCF-OPH.

But Munt's allegations fail to establish the third element. While Munt alleges his segregation and transfer were out of retaliation, Defendants allege the motive for both actions was a security threat. In his complaint, Munt relies on an affidavit authored by Defendant Norton in alleging that Defendant Norton admitted to confiscating Munt's affidavit. In her affidavit, Defendant Norton states:

> In March 2018, Munt sent me a request to make him indigent offender copies of an affidavit he authored. Per the indigent policy, DOC staff perform a cursory review of the offender's documents for appropriateness. When I reviewed Munt's affidavit, I discovered that a large portion of it discussed his fixation and romantic feelings for the same female correctional officer that he wrote a letter about in November 2017. I confiscated Munt's affidavit as contraband, wrote the incident report, and logged the writing into evidence . . . Institutions must guard against inappropriate interactions between offenders and staff. Officers and offenders have a strictly professional relationship and any other interactions, especially romantic relationships, are a security threat to the institution. [] DOC staff decided, for

>the security of the facility and the safety of staff, to transfer Munt to Minnesota Correction Facility-Oak Park Heights (MCF-OPH).

*Munt v. Roy*, Case No. 17-cv-5215 (SRN/SER), ECF No. 51. The very affidavit Munt cites to allege Defendants engaged in retaliatory discipline establishes the exact opposite. Even if Defendants' decision to transfer Munt was motivated in part by his lawsuit, Munt has failed to meet his substantial burden of demonstrating that he would not have been transferred but for the retaliatory motive. Munt's romantic feelings toward the MCF-STW correctional offer posed a legitimate security concern and, at least in part, motivated Munt's transfer to MCF-OPH. *See Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (although prisoner's filing of litigation was factor in transfer, transfer would have occurred regardless, given prisoner's serious and repetitive misconduct). Even when taking Munt's allegations in the light most favorable to him, the Court does not find a plausible retaliatory discipline claim against Defendants; the Court therefore recommends dismissal.

### 2. Access to Court Claim

Munt's access to court claim is a continuation of his retaliation claims.[1] Munt alleges he was denied access to the courts because his affidavit that he wanted to copy was confiscated and he lacked access to legal resources. On the latter, Munt specifically claims he did not have access to the law library or his legal materials, address book, or envelopes while he was in segregation from March 1 through March 9. Munt also claims he lost legal materials when moved from MCF-STW and MCF-OPH.

---

[1] It is unclear if Munt intended to bring a separate access to the courts claim because his claim is framed around retaliation for exercising his right to access the courts. (Compl., at 10, 16). The Court addresses an access to the courts claim independently out of an abundance of caution.

8

To establish an access to the courts claim, "a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nicols*, 511 F.3d 826, 831 (8th Cir. 2008) (internal quotations omitted). However,

> an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 832 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Viewed objectively, Munt does not sufficiently plead a meaningful access to courts claim because he has not alleged—let alone demonstrated—any actual injury from the allegedly restricted legal materials, his confiscated affidavit, or his lost legal materials. Although Munt claims his access to legal materials was restricted during segregation and that his affidavit was confiscated, Munt fails to demonstrate that his efforts at pursuing a legal claim have been hindered. In fact, Munt has pursued his claim by filing a habeas petition in a Minnesota state district court. *See Munt v. Miles*, No. A18-0740, 2018 WL 6165501 (Minn. Ct. App. Nov. 26, 2018). This petition was ultimately found frivolous, lacking in legal basis, and moot. Munt also does not indicate how his affidavit would have changed the outcome of this proceeding or any other harm Munt suffered as a result of the

9

confiscated affidavit. *See Lewis*, 518 U.S. at 351. On any loss of legal materials, Munt does not specify what was lost, why it matters, or why it cannot be replaced. There is no relevant injury alleged from the loss of Munt's property. To the extent Munt brings an access to courts claim, the Court recommends dismissal because Munt has not alleged an actual injury related to the confiscated affidavit, his restricted access to legal resources, or his loss of legal materials.

### 3.     Other Grounds for Dismissal

Even if Munt's claims survived under Rule 12(b)(6), his claims fail for a multitude of other reasons. Any claims against Defendant Roy fail because Munt does not allege Defendant Roy's personal involvement or responsibility for the alleged constitutional violations, as required in a § 1983 claim. Defendants are entitled to qualified immunity to the extent Munt has failed to establish constitutional violations. The Court does not find any state law claims and declines to exercise jurisdiction over any state law claims Munt may assert because the Court has dismissed the federal claims before it. And finally, much of the relief Munt seeks is legally barred.

#### a.     Failure to Allege Personal Involvement

A plaintiff must allege Defendants' personal involvement or responsibility for the alleged constitutional violations to state a § 1983 claim. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). Defendants argue Munt fails to allege personal involvement for all defendants on both of his claims. The Court agrees as to Defendant Roy.[2] Munt states Roy

---

[2] As described earlier, Munt has detailed specific allegations against the other defendants on his retaliatory discipline and access to courts claims. Munt claimed Defendants Miles and Norton admitted to taking

10

"is the ultimate person responsible for the policies that underly the Constitutional violations in question" but does not specifically state how Defendant Roy was personally involved in the access to court or retaliatory discipline claims. Munt therefore cannot maintain claims against Defendant Roy under § 1983 under his current pleadings.

### b.     Qualified Immunity

"Qualified immunity shields government officials from liability unless the conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). Courts examine "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

Here, Munt's claims either do not establish constitutional violations or Munt has failed to meet his pleading burden. To the extent no constitutional violation is established, Defendants are entitled to qualified immunity. To the extent Munt failed to meet his pleading burden, his pleading deficiencies deprive the Court of the ability to analyze the claims fully, including whether Defendants are entitled to qualified immunity on those particular claims.

---

Munt's affidavit. Munt alleged Defendants Warner and Wanchena ignored his written requests for explanations as to why Munt was in segregation. Munt asserted Defendant Cox packed Munt's property for the transfer. Munt claimed Defendant Pawelk denied that Munt's transfer was in response to the affidavit. Because Munt is a *pro se* party, the Court liberally construes his pleadings when analyzing his legal claims.

### c. State Law Claims

Munt alleges the Court "has supplemental jurisdiction over the state claims under 28 U.S.C. [§] 1367." (Compl., at 6). Munt does not specify what claims he brings under Minnesota law or cite to any state law. Munt's complaint included allegations about losing property in the form of legal materials, but these allegations appeared connected to his access to court claims. To the extent Munt brings any claims under state law, the Court declines to exercise its supplemental jurisdiction because the Court recommends dismissal of all federal claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

### d. Certain Requested Relief is Barred

Munt does not specify whether he sues the Defendants in their official or individual capacities. He seeks declaratory and injunctive relief, as well as monetary damage, but does not differentiate how the relief sought applies to Defendants.

The Eleventh Amendment bars suit against a state, absent a state's consent to filing of such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). This immunity applies to claims against officials sued in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). A federal court lacks jurisdiction over claims barred by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Thus, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their

individual as distinct from their official capacity."); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits). To the extent Munt seeks injunctive relief against Defendants in their individual capacities, the Court recommends dismissal. And to the extent Munt seeks monetary relief against Defendants in their official capacities, the Court also recommends dismissal. Because the Court recommends dismissal of Munt's claims, the Court does not address Munt's other requested relief.[3]

### III.    MOTION TO DISMISS OR AMEND THE CAPTION

Defendant Hammer filed a motion to dismiss or amend the caption. (ECF No. 33). Defendant Hammer asserted that it does not appear Munt intended to name Hammer as a defendant because Munt did not list Hammer in the caption or allege any specific factual allegations against Hammer. The parties conferred and Munt sent a letter dated March 5, 2018 indicating that adding Steven Hammer to the complaint was a typo and "acknowledged that he (Hammer) should be dismissed as Hammer played no role in the events of this suit." (Munt Letter, ECF No. 34, Ex. A). Since both parties agree that Steven Hammer should not be a defendant, the Court recommends dismissing all claims against him and removing him from this complaint.

### IV.    REQUEST FOR STAY

Munt filed a motion to stay the proceedings in this matter based on a pending appeal to the Eighth Circuit Court of Appeals. (ECF No. 42). Munt states "[t]here is currently an

---

[3] The other requested relief refers to any injunctive relief Munt brings against Defendants in their official capacity or compensatory relief in their individual capacity.

appeal before the 8th Circuit involving Judge Nelson and Magistrate Rau violating the mandatory disqualification under 28 USC § 455(5)(iv)." (ECF No. 42, at 1).

Courts should only issue stays "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court noted that in deciding whether to exercise this discretion, courts must "weigh competing interests" and look at the hardships the party requesting the stay would suffer. *Lunde v. Helms*, 898 F.2d 1343, 1354–55 (8th Cir. 1990).

Because the equities weigh in favor of Defendants, the Court recommends denying Munt's request to stay the proceedings. Munt asserts that if he wins the appeal, any decisions in this case will be reversed. (ECF No. 42, at 1). Munt does not however point to any specific hardship or inequity if he is required to move forward under District Judge Susan Richard Nelson and Magistrate Judge Steven E. Rau. Defendants claim they have an interest in moving the case toward resolution and will suffer hardship if a stay of an unknown duration is imposed. It stands to reason that Defendants will incur additional financial and time obligations if the case is stayed. In the interest of judicial economy and in an effort to mitigate any hardships Defendants may suffer from an ongoing case, the Court recommends denying the stay.

## V.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Defendants' Motions to Dismiss, (ECF No. 24), be **GRANTED**;

2. Defendant Hammer's Motion to Dismiss or Amend the Caption, (ECF No. 32), be **GRANTED**;

3. Munt's Request for Stay, (ECF No. 42), be **DENIED**; and

4. Munt's Complaint, (ECF No. 1), be **DISMISSED WITH PREJUDICE.**

Date: June 13, 2019	*s/ Steven E. Rau*
	Steven E. Rau
	United States Magistrate Judge
	District of Minnesota

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).