# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, <br><br> Plaintiff, <br><br> v. <br><br> Tom Roy, Eddie Miles, Victor Wanchena, Chris Pawelk, Mike Warner, Susan Norton, Lisa Cox, and Steve Hammer, in their individual and official capacities, <br><br> Defendants. | Case No. 0:18-cv-2144-SRN-SER <br><br> **MEMORANDUM OPINION AND ORDER** |

Joel Marvin Munt, No. 236179, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, pro se.

Rachel E. Bell-Munger, Minnesota Attorney General's Office, 445 Minnesota St., Ste. 900, St. Paul MN 55101-2134, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Joel Marvin Munt's Objections [Doc. No. 50] to the Report and Recommendation ("R&R" [Doc. No. 48]) of Magistrate Judge Steven E. Rau dated June 13, 2019. In the R&R, the magistrate judge recommended : (1) granting Defendants' Motion to Dismiss [Doc. No. 24]; (2) granting Defendant Hammer's Motion to Dismiss or Amend the Caption [Doc. No. 32]; (3) denying Plaintiff's Request for a Stay [Doc. No. 42]; and (4) dismissing Plaintiff's Complaint [Doc. No.1] with prejudice. (*See* R&R at 14–15.) For the reasons set forth below, the Court overrules Plaintiff's Objections in part, sustains them in part, and adopts the R&R.

# I.    BACKGROUND

In July 2018, Plaintiff Joel Marvin Munt filed this action pursuant to 42 U.S.C. § 1983.  Plaintiff, who is serving a life sentence for the first-degree murder of his ex-wife, alleges that Defendants, who are officers and employees of the Minnesota Department of Corrections ("DOC"), retaliated against him for exercising his constitutional right of access to the courts.

## A.  Related Cases and Filings

The facts of this case are related to a state court petition for a writ of habeas corpus filed by Munt, *see Munt v. Miles*, No. A18-0740, 2018 WL 6165501, at *1 (Minn. Ct. App. Nov. 26, 2018), *review denied*, (Minn. Feb. 19, 2019), and to the facts and claims in another federal lawsuit, *Munt v. Roy*, 17-cv-5215 (SRN/SER).[1]  Munt refers to both of these matters in the Complaint in the instant case.  (*See* Compl. [Doc. No. 1] at 8–13, ¶¶ 1, 10, 13 n.7, 18 n. 12, 19, 24 n. 18.)

The state court habeas petition arose from events that began in November 2017.  At that time, Munt gave a corrections officer at MCF-Stillwater a 19-page love letter.  *Munt*, 2018 WL 6165501, at *1. The officer filed an incident report and turned the letter over to prison authorities, who charged Munt with violating several prison regulations. *Id.* After he admitted to violating DOC rules against abuse/harassment and disorderly conduct, Munt served ten days in segregation as a sanction.  *Id.*  Afterwards, Munt sought to challenge this discipline via a habeas petition.  *Id.*  The state district court dismissed Munt's habeas

---

[1] Plaintiff has also filed retaliation-based § 1983 claims in *Munt v. Schnell*, 18-cv-3390 (DWF/ECW), and *Munt v. Schnell*, 19-cv-1142 (NEB/ECW).

petition with prejudice, finding it "frivolous or malicious," with "no arguable basis in law or in fact." *Id.* The Minnesota Court of Appeals agreed, finding Munt's claims were moot and meritless, *id.*, and, in February 2019, the Minnesota Supreme Court denied review. *Id.*

In the related federal lawsuit, *Munt v. Roy*, Plaintiff asserted § 1983 claims alleging the general denial of access to the courts and legal resources. *See Munt v. Roy*, 17-cv-5215 (SRN/SER), 2019 WL 157289, at *1 (D. Minn. Jan. 10, 2019). In January 2019, this Court dismissed the suit, finding that Munt failed to state a claim under Fed. R. Civ. P. 12(b)(6), and failed to sufficiently demonstrate the personal involvement of certain defendants, who were also entitled to Eleventh Amendment immunity and qualified immunity. *Id.* at *2–7. Plaintiff's Complaint in the instant action expressly refers to several filings in the *Munt v. Roy* matter. (*See, e.g.*, Compl. ¶¶ 13 n.7, 18 n.12, 19 n.13.) Among the documents Munt references are the Affidavit of Susan Norton, *Munt v. Roy*, 17-cv-5215 (SRN/SER) [Doc. No. 51], and the Affidavit of Lisa Cox, *id.* [Doc. No. 52].[2] (Compl. ¶¶ 13 n.7, 18 n.12.)

In her affidavit, Ms. Norton states that in March 2018, Munt requested indigent offender copies of an affidavit (herein after, "the Affidavit") that he had written and which he planned to submit in his state court habeas action. (Norton Aff. ¶ 5.) Per the DOC's Indigent Offender Policy,[3] Norton first reviewed the document. (*Id.*) She determined that

---

[2] As noted, the affidavits of Ms. Norton and Ms. Cox are found in *Munt v. Roy*, 17-cv-5215, at Docket Numbers 51 and 52, respectively. The Court refers to them throughout this Order simply as "the Norton Affidavit" and "the Cox Affidavit," without further indicating that they are docketed in the 17-cv-5215 matter.

[3] The policy concerns the provision of writing materials and personal hygiene products to prisoners with limited financial resources. (*See generally*, Norton Aff., Ex. 1 (Indigent Offender Policy).)

in the Affidavit, Munt expressed his fixation with, and romantic feelings for, the same corrections officer to whom he had written the November 2017 letter. (*Id*.) Norton states that DOC policy provides for the confiscation of contraband, which includes any items deemed to present a risk to security, and the DOC deems romantic relationships between offenders and officers a security threat. (*Id*. ¶ 6.) Norton acknowledges that she confiscated the Affidavit as contraband, wrote an incident report, and logged the writing into evidence. (*Id*.) As a result of this incident, Norton states that the DOC transferred Munt to Minnesota Correctional Facility ("MCF")-Oak Park Heights. (*Id*. ¶ 7.)

Norton also asserts that Munt sent several "kites" (i.e., inmates' written requests) to her and other MCF-Stillwater staff regarding the confiscation of the Affidavit, transfer, and loss of items of personal property. (*Id*. ¶ 8.) Norton states that MCF-Stillwater Warden Eddie Miles responded to Munt's kite about the confiscation of the Affidavit, explaining that the document demonstrated a security risk to the officer and was properly confiscated under the DOC's Contraband Policy. (*Id*. ¶ 9.)

As to Munt's personal property, Norton states that Associate MCF-Stillwater Warden Victor Wanchena informed Munt that the prison's Property Department staff packed his belongings pursuant to the DOC's Property Policy. (*Id*. ¶ 10.) Further, Associate Warden Wanchena told Munt that a bin containing his legal materials was sent to MCF-Oak Park Heights, and he directed Munt to the disposition form that Munt had received about his property. (*Id*.) Warden Miles also responded to Munt, reiterating Associate Warden Wanchena's points, and informing him that offenders are not permitted to pack their own belongings. (*Id*.)

Ms. Norton attached exhibits to her affidavit, including the incident report, some of Munt's kites, Defendants' responses to kites, and prison policies. (*See generally*, Norton Aff. Exs. 1–5).) The kites and Defendants' responses to them concern the confiscation of the Affidavit, the Indigent Offender Policy, Munt's transfer, and the packing of his belongings prior to transfer. (*See id*.)

As noted, the Complaint also refers to the Cox Affidavit. (Compl. ¶ 18 n.12.) Ms. Cox is a correctional officer in MCF-Stillwater's Property Department. (Cox Aff. ¶ 1.) She states that Property Department staff inspect and process all incoming and outgoing offender property. (*Id.* ¶ 4.) With respect to the property of an inmate who is pending transfer, staff inventory the inmate's property, consistent with DOC Policy 302.250, entitled "Offender Property." (*Id*. at ¶¶ 4–5.) The DOC places a two-storage-bin limit on the quantity of offenders' personal property. (*Id.* ¶ 6.) Cox inventoried Munt's property bins on March 9, 2018, and completed a Property Disposition Form, (*id.* ¶ 5), which she attached to her affidavit. (Cox Aff., Ex. 1 [Doc. No. 52-1] (Property Disposition Form).) The Property Disposition Form lists "misc. papers" among the items removed. (*Id.*) Ms. Cox attests that documents marked as legal documents were put in a separate bin and sent to MCF-Oak Park Heights. (Cox Aff. ¶ 6.) Munt's miscellaneous papers, which included letters, cards, and calendars, apparently exceeded the two-bin property limit. (*Id.*, Ex. 1 (Property Disposition Form).) Staff shipped them to one of Munt's family members whom he had designated to receive them. (*Id.*)

### B. Plaintiff's Allegations

Munt contends that Defendants at MCF-Stillwater placed him in segregation and transferred him to a different prison "in retaliation for my affidavit." (Compl. at 15, ¶¶ 30–31.) Consistent with the Norton Affidavit, Munt alleges that after he requested a copy of the Affidavit in late February 2018, (*id.* at 8, ¶ 1), DOC Paralegal Susan Norton and MCF-Stillwater Associate Warden Wanchena reviewed the document. (*Id.* at 9–11, ¶¶ 4, 13.) Based on Ms. Norton's review, Munt acknowledges that she wrote an incident report on March 1, 2018, recommending Plaintiff's detention. (*Id.*) Munt was placed in segregation later that day. (*Id.* at 9, ¶ 7.) Munt alleges that in a related case, *Munt v. Roy*, 17-cv-5215 (SRN/SER), the DOC has "admitted" that it confiscated the Affidavit, placed him in segregation, and transferred him because of the Affidavit. (*Id.* at 12, ¶ 19.)

Munt further contends that while in segregation, Defendants failed to process and respond to various kites that he filed with respect to his placement in segregation. (*Id.* at 11, ¶¶ 14–16.) He also alleges that Defendants impeded his access to the courts by restricting and/or depriving his access to legal resources and papers while he was in segregation. (*Id.* at 15, ¶ 32.) In connection with his prison transfer, Plaintiff alleges that Defendants "very loosely" packed his belongings and intentionally removed certain items, which he describes as "everything I needed to meaningfully continue pursuing my cases." (*Id.* at 16, ¶ 34.)

In this suit, Munt seeks injunctive relief, including the return of the Affidavit and all of his paperwork, declaratory relief, and compensatory damages. (*Id.*, Prayer for Relief at 18–35.)

**C.  R&R**

Ruling on Defendants' Motion to Dismiss in the R&R, Magistrate Judge Rau found that Munt's retaliation claims fail because he does not plausibly allege that Defendants took adverse actions against him purely out of a retaliatory motive.  (R&R at 6–8.)  He further found that Munt fails to plausibly allege a separate claim for denial of access to courts, as he does not allege any actual injury resulting from restricted access to legal materials, the confiscated Affidavit, or lost legal materials.  (*Id.* at 8–9.)

In addition, Magistrate Judge Rau found that Munt fails to allege that Defendant Roy, the former Commissioner of the DOC, was personally involved in any of the alleged constitutional violations.  (*Id.* at 10–11.)  He also found that because Munt fails to allege constitutional violations, Defendants are either entitled to qualified immunity, or Munt's pleading deficiencies deprive the Court of the ability to fully analyze the question of qualified immunity.  (*Id.* at 11.)

Also, while Munt broadly refers to state law claims, stating, "The court also has supplemental jurisdiction over the state claims under 28 U.S.C. section 1367," (Compl. at 4), Magistrate Judge Rau found that he fails to specify any such claims.  (R&R at 12.)  Because the magistrate judge recommended the dismissal of all federal claims over which the Court has original jurisdiction, he also recommended that the Court decline to exercise supplemental jurisdiction over any state law claims.  (*Id.* at 12) (citing 28 U.S.C. § 1367(c)(3)).

The magistrate judge also found that Eleventh Amendment immunity bars any claims for compensatory damages against Defendants in their official capacities, (*id.* at 12),

and claims for injunctive relief against Defendants in their individual capacities. (*Id.* at 12–13.)

In addition to addressing Defendants' collective motion to dismiss, the magistrate judge also considered Defendant Hammer's Motion to Dismiss or Amend the Caption. (*Id.* at 13.) Magistrate Judge Rau noted that Munt himself agrees that the addition of Hammer to the Complaint was a typographical error and that he should be dismissed from the lawsuit. (*Id.*)

Also, Magistrate Judge Rau denied Munt's motion to stay the proceedings pending an appeal. (*Id.* at 13–14.) He found that, on balance, the equities favor the denial of a stay. (*Id.*)

Finally, because the magistrate judge concluded that Munt fails to state a claim, he recommended that Defendants' motion be granted and the case be dismissed with prejudice. (*Id.* at 14–15.)

### D. Objections

Munt objects to nearly all aspects of the R&R.[4] He presents several procedural arguments, asserting that the magistrate judge applied the wrong standard of review, considered materials outside the pleadings, and improperly favored Defendants' arguments concerning the Affidavit. (Objs. at 1, 3, 5.) Similarly, Munt argues, Magistrate Judge Rau erred by deciding issues of disputed fact, (*id.* at 5, 9–10), and "muddied the waters" by considering matters only relevant to other suits filed by Munt. (*Id.* at 3–4.)

---

[4] Because Munt does not object to the dismissal of Steve Hammer, Mr. Hammer's motion is granted and he is hereby dismissed as a defendant.

Munt also presents an array of factual and legal arguments. He asserts that the magistrate judge misconstrued his Complaint to assert a stand-alone access-to-courts claim. (*Id.* at 2, 12.) He states, "No such claim was raised, though Plaintiff stated he intended to amend [the Complaint] to include such a claim." (*Id.* at 12.) Rather, Munt argues, the allegations in question simply support his claims of retaliation, (*id.* at 12–14), and the magistrate judge thus failed to consider, as retaliatory acts, his lack of legal resources and access in segregation and loss of legal papers during his transfer. (*Id.* at 2.) In spite of this clarification, Munt nevertheless challenges the magistrate judge's finding on a stand-alone access-to-courts claim that he suffered no harm. (*Id.* at 12–13.)

As to his retaliation claim, Munt disputes the magistrate judge's finding that he fails to sufficiently allege a retaliatory motive, arguing that "at no time did Defendants present anything to indicate any of the adverse actions would have occurred 'but for' the protected conduct." (*Id.* at 8.) In support of his argument that he sufficiently alleges Defendants' retaliatory motive, Munt asks the Court to make certain inferences and points to particular allegations. For instance, he argues that he is entitled to an adverse inference of improper motive based on Defendants' alleged destruction of his Affidavit. (*Id.* at 5.) Also, Munt argues that in connection with the Affidavit, Defendants did not charge him with breaking any current rule. (*Id.* at 10–11.) The lack of any charges, he contends, supports an inference that Defendants retaliated against him based on his challenge to past discipline. (*Id.*) Similarly, he states that the alleged retaliatory acts occurred in close temporal proximity to the seizure of the Affidavit, suggesting that his effort to access the court supports a finding of an improper but-for motive for Defendants' actions. (*Id.* at 7–8.) In

addition, he faults the magistrate judge for failing to acknowledge a purported statement from Warden Miles that in the future, Defendants would respond in the same manner if Munt "file[d] something that [staff] didn't like," (*id.* at 7), and for finding that the Affidavit was contraband. (*Id.* at 8–9.) Furthermore, he argues that by writing the Affidavit, he was not engaging in repetitive, violative conduct, but was merely attempting to appeal the discipline resulting from the seizure of the first letter. (*Id.* at 6–8, 10.)

Munt also objects to the magistrate judge's rulings regarding: (1) Commissioner Roy's lack of personal involvement, (*id.* at 15); (2) qualified immunity, (*id.* at 16–17); (3) whether he brings claims against Defendants in both their individual and official capacities, (*id.* at 17); (4) the viability of his state law claim, (*id.* ); (5) denial of a stay, (*id.* at 17–20); and (6) the failure to explain the recommendation for dismissal with prejudice. (*Id.* at 20.)

## II.  DISCUSSION

The district court must conduct a de novo review of a magistrate judge's report and recommendation on dispositive motions to which specific objections have been made. Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b).

### A.  Assigned Judges

At the outset of his Objections, Munt argues that Magistrate Judge Rau and the undersigned judge are "barred" from hearing this case under 28 U.S.C. § 455(b)(5)(iv). (Objs. at 1.) The provision that Munt cites refers to the disqualification of a judge or magistrate judge when he or she is "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5)(iv). There is no basis for which it is "likely" that the undersigned judge

or Magistrate Judge Rau will be material witnesses in this case, nor does Munt plausibly allege any such basis. The Court therefore overrules this ground of objection.

**B. Application of the Standard of Review**

Munt argues that the magistrate judge incorrectly applied the standard of review by crediting facts in the Norton Affidavit (including facts concerning the content of the Affidavit) over those alleged in the Complaint. (Objs. at 1–6.) He argues that he has raised jury questions, but the magistrate judge improperly considered the DOC's explanations over his allegations. Relatedly, he argues that the magistrate judge improperly considered facts from Munt's "other suit." (*Id.* at 11.)

When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999). Courts may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co*., 652 F.3d 971, 976 (8th Cir. 2011) (quotation omitted)). The Norton Affidavit and Cox Affidavit are materials embraced by the pleadings. Munt specifically refers to them in the Complaint, providing citations to the related case in which they were filed, *Munt v. Roy*, 17-cv-5215 (SRN/SER). (Compl. at 10–12, ¶¶ 13 n.7, 18 n.12.) The Court will therefore consider these sworn documents in considering whether Munt states a claim upon which relief can be granted.

As to the exhibits attached to the Norton Affidavit and Cox Affidavit—consisting of DOC policies on contraband and prisoner property, the incident report, property disposition form, and some of Munt's kites and DOC's responses—the Court finds that

they are likewise embraced by the Complaint. In the Complaint, Munt alleges that he sent a number of kites regarding his placement in segregation, transfer, the confiscation of his Affidavit, and the disposition of his property. (*Id*. at 8–13, ¶¶ 2–16, 21–24.) Norton acknowledges several of these kites in her affidavit. (Norton Aff. ¶ 8.) Among them is a May 16, 2018 response from Warden Miles to which Munt appears to refer in the Complaint, stating "STW Warden Miles admitted that the transfer was due to the affidavit."[5] (Compl. at 13, ¶ 24 n.18.) In addition, the Norton and Cox Affidavits refer to DOC policies on indigent offenders, contraband, and property, (Norton Aff. ¶¶ 4–6, 10; Cox Aff. ¶¶ 4), as well as to the incident report, (Norton Aff. ¶ 5), and property disposition form. (Cox. Aff. ¶ 5.)

As to Munt's argument that Magistrate Judge Rau improperly based his findings and conclusions on issues that are part of Munt's "other suit," and "matters not before him," he does not identify the suit in question in his Objections. (Objs. at 3, 11.) Assuming that he refers to *Munt v. Roy*, 17-cv-5215 (SRN/SER), Munt acknowledges that the two cases are related, citing to documents filed in that case in the instant Complaint, as noted above. (*See, e.g.*, Compl. at 10–12, ¶¶ 13 n.7, 18 n.12, 19 n.13.)

---

[5] Although the response is dated May 16, 2018, (Norton Aff., Ex. 4 [Doc. No. 51-1 at 12] (May 16, 2018 Memo from Miles to Munt)), whereas the Complaint refers to a response dated May 17, 2018, (Compl. at 13, ¶ 24 n.18), they appear to be the same document. The response mentioned in the Complaint and the response attached to the Norton Affidavit are in response to a kite dated May 9, 2018. (*Compare* Compl. at 13, ¶ 24 n.18, *with* Norton Aff., Ex. 4 [Doc. No. 51-1 at 12] (May 16, 2018 Memo from Miles to Munt).)

Not only are these affidavits expressly embraced by the pleadings, they were filed in the public docket of 17-cv-5215. Courts may rely on matters of public record on a motion to dismiss. *Illig*, 652 F.3d at 976.

The Court finds no instances in which the magistrate judge improperly considered facts or based his conclusions on issues from *Munt v. Roy*, 17-cv-5215 (SRN/SER), or any of Munt's other cases, including his state court habeas petition. Munt himself incorporated these facts into the Complaint by specifically referencing documents filed in other cases.

## C. Retaliation Claims

### 1. Conduct Encompassed by Munt's Retaliation Claims

Munt alleges that Defendants disciplined and transferred him for the exercise of his First Amendment right to petition and access the courts.[6] (Compl. at 2.) In addition, Munt argues that Defendants' other alleged actions in confiscating the Affidavit, limiting his access to materials and failing to respond to his kites about segregation while in segregation, and mishandling and/or losing his legal papers during the transfer extend from these acts of retaliation. (*See* Compl. at 10–11, ¶¶ 10–16; Objs. at 14; Pl.'s Reply [Doc. No. 52] at 5) ("My property would not have been lost but for [Defendants'] retaliatory acts, and the way they carefully removed my legal papers . . . proves they wanted it to have maximum adversity."). He faults the magistrate judge for construing these other allegations to assert an independent access-to-courts claim. (Objs. at 2, 12, 14.)

---

[6] Munt also refers to the right of "privilege of habeas corpus" and the right "to be free of retaliation." (Compl. at 2.) The Court construes these rights under the same First Amendment analytical rubric as his right of access to the courts.

Quite understandably, the magistrate judge found it unclear whether Munt alleges a separate access-to-courts claim. (R&R at 8 n.1.) In the Complaint, Munt alleges, "Not only is the retaliation harm in itself, but I was also 100% denied access to the Courts during the time I was in Seg.," (Compl. at 15, ¶ 31), and states, "Claims involved: Retaliation against Access to the Courts and Privilege of Habeas corpus, *Denial of Meaningful Access to the Courts*, and Retaliatory Seg and Transfer." (*Id.* at 8) (emphasis added). In an abundance of caution, particularly in light of Munt's pro se status, Magistrate Judge Rau analyzed Munt's allegations concerning a lack of access to legal resources while in segregation, and the loss of personal property, including legal materials, during his transfer, as grounds for a separate access-to-courts claim. (R&R at 8 n.1.) Now, however, thanks to Munt's clarification that he asserted no such stand-alone claim, his objection in this regard is sustained. The Court will therefore consider whether these other alleged actions, which Munt contends are an extension of his claims of retaliatory discipline and transfer, plausibly support a claim of retaliation.

### 2. Actual Motivation for the Adverse Actions

As noted, the acts of alleged retaliation concern two primary actions, from which ancillary alleged acts of retaliation followed. (*See* Compl. at 5–7, ¶¶ 4–8) (describing Defendants' roles with respect to placement in segregation, transfer, and taking property).) *First*, Munt asserts that Defendants placed him in segregation from March 1 through March 9. During this time, he also alleges that Defendants confiscated the Affidavit, denied him access to the law library, his legal materials, address book, and envelopes, and failed to respond to his kites. *Second*, Munt asserts that Defendants transferred him to another

prison. Munt also alleges that Defendants lost or destroyed his legal materials during the transfer.

As the magistrate judge observed, to assert a prima facie case of retaliation, a prisoner must show that: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (quoting *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007)). The magistrate judge properly found that Munt sufficiently alleges the first two elements.

However, Magistrate Judge Rau found that Munt fails to plausibly allege the third factor of a retaliation claim, which requires a prisoner to establish that "a desire to retaliate was the actual motivating factor" behind the adverse action. *Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996) (applying test to claim for retaliatory transfer); *Haynes*, 588 F.3d at 1156 (applying test to claim for retaliatory discipline). "This is a 'but for' test dealing with motive, not causation." *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *see also Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (stating that the retaliatory motive must be a "substantial factor," or "but-for cause" of the adverse action). Simply labeling an action as retaliatory is insufficient to establish a retaliation claim. *See Meuir*, 487 F.3d at 1119.

With respect to the confiscated Affidavit, Munt appears to argue that he is entitled to an "adverse inference" of Defendants' improper motive. (Objs. at 4–5) (citing *Langford v. Norris*, 614 F.3d 445, 462 (8th Cir. 2010)). His argument is misplaced. A court may permit a jury instruction of an adverse inference where a party, in bad faith, intentionally destroys evidence, thereby prejudicing the other party. *Stevenson v. Union Pac. R. Co.*,

354 F.3d 739, 747–49 (8th Cir. 2004). Here, however, Defendants confiscated the Affidavit pursuant to the DOC's Contraband Policy because Munt continued to express romantic feelings for the corrections officer. Per the DOC's contraband policy, contraband "must be confiscated and stored pending disposition," and must eventually "be disposed of." (Norton Aff., Ex. 3 (Contraband Policy ¶ E).) Defendants followed internal procedures regarding the document, Munt was not prejudiced, and no adverse inference is warranted.

Regarding all of the alleged adverse actions, Munt argues that "at no time did Defendants present anything to indicate any of the adverse actions would have occurred 'but for' the protected conduct." (Objs. at 8; *see also id*. at 9 (Defendants "never said the [adverse] acts would have occurred without my protected conduct").) But Munt—not Defendants—bears the burden of plausibly alleging this element of his prima facie case, *Goff v. Burton*, 7 F.3d 734, 737–38 (8th Cir. 1993), and he fails to do so.

Rather, as Magistrate Judge Rau properly found, "[t]he very affidavit Munt cites to allege Defendants engaged in retaliatory discipline [i.e., the Norton Affidavit,] establishes the exact opposite." (R&R at 3.) As Defendants note, Munt relies on the Norton Affidavit without adding allegations to dispute or contradict its substance. (Def.'s Resp. to Objs. [Doc. No. 51] at 6.) Ms. Norton, the MCF-Stillwater Litigation Coordinator, reviewed the Affidavit and determined that "a large portion of it discussed [Munt's] fixation and romantic feelings for" the same corrections officer for whom he had previously expressed romantic feelings, and for which prison staff had disciplined Munt in the past. (Norton Aff. ¶¶ 3–5); *see also Munt*, 2018 WL 6165501, at *1 (noting that as to the earlier love

16

letter, Munt admitted to charges of abuse/harassment and disorderly conduct, for which he was placed in segregation for ten days). Norton attests that inappropriate interactions between offenders and staff present a security threat to the institution, (Norton Aff. ¶ 6; *also id.*, Ex. 4 [Doc. No. 51-1 at 12] (May 16, 2018 Memo from Miles to Munt) (explaining that inappropriate offender and staff interactions pose a security risk)).

Norton confiscated the Affidavit, finding it constituted contraband. (Norton Aff. ¶¶ 5–7.) The DOC defines contraband as "an object that poses a substantial likelihood of physical harm or jeopardizes the facility's ability to ensure the safety, security, and orderly operation of the Minnesota correctional facility." (*Id.*, Ex. 3 (Contraband Policy).) Proscribed contraband includes, among other things, items "determined to present a risk to the security of the facility or safety of staff and offenders/residents." (Norton Aff. ¶ 6.) DOC policy requires that contraband "must be confiscated and stored pending disposition," and must eventually "be disposed of." (*Id.*, Ex. 3 (Contraband Policy ¶ E).)

Munt fails to plausibly allege that but for the exercise of his right of access to the Courts, these adverse actions would not have occurred. Munt contends that because the offending language was in an affidavit that challenged underlying prison discipline, the very nature of the activity lends plausibility to his claim that Defendants disciplined and transferred him based on his efforts to access the courts. But the Eighth Circuit has explained,

> [T]he essential inquiry is whether the decision to transfer was *motivated* by the *fact* that the inmate sued, or by the *nature* of the dispute underlying the lawsuit. If the substance of the inmate's claim makes it appropriate to transfer him under the [Interstate Corrections] Compact for rational penological

reasons, the transfer does not become unconstitutional simply because the inmate made his claims known by filing a lawsuit.

*Sisneros*, 95 F.3d at 752. The Eighth Circuit has thus found that where an inmate's protected conduct is merely *a* factor in the prison's adverse action—not *the* motivating factor—the but-for test is not met. *Goff*, 7 F.3d at 737 ("Finding that an impermissible retaliatory motive was a *factor* is insufficient to establish a claim in a prisoner retaliatory transfer case."); *see also Hazen v. Reagan*, 16 F.3d 921, 926 (8th Cir. 1994) (finding that although prisoner's filing of two lawsuits was a factor in his transfer, even if had he not filed the lawsuits, transfer would have occurred because of prisoner's troublesome, manipulative conduct). As Warden Miles explained to Munt, "The affidavit you wrote demonstrated a security risk to the officer. *The fact that it was an affidavit written by you does not change the fact that it purported a potential risk.* . . . The confiscation of your affidavit was in keeping with policy and will not be returned." (Norton Aff., Ex. 4 [Doc. No. 51-1 at 9] (Apr. 18, 2018 Memo from Miles to Munt.)) (emphasis added). Here, as Magistrate Judge Rau found, even if Defendants were partially motivated to retaliate against Munt for filing his habeas suit, his concerning statements about the corrections officer also prompted their actions.

Munt further contends that he was not officially charged with violating DOC rules with respect to the Affidavit, and that prison officials cannot simply label any item contraband. (Objs. at 10; Compl. at 10, ¶ 11.) This allegation does not, however, sufficiently support a plausible claim that but for Plaintiff's constitutional activities, Defendants would not have taken adverse action. *See Moots v. Lombardi*, 453 F.3d 1020,

1023 (8th Cir. 2006) ("The fact that the conduct violation was later expunged does not mean that there was not some evidence for its imposition.").  Regardless of whether Defendants placed Munt in administrative segregation versus disciplinary segregation or officially charged him with a rule violation, Munt does not dispute the fundamental facts that factored into Defendants' adverse actions: in the Affidavit, he continued to express romantic feelings about the same corrections officer that had prompted his prior discipline, and Defendants informed him that they considered the Affidavit contraband, as Munt's romantic statements presented a security risk.  *Cf. Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (a prisoner can assert a retaliation claim by alleging that discipline was based on false allegations); *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at * 12–13 (D. Minn. Sept. 30, 2014) (noting that the plaintiff "failed to allege the sort of 'additional facts' needed to 'rule out the alternative'" explanation for the facility's conduct).  Munt alleges no plausible alternative facts.[7]

---

[7] Munt repeatedly refers to Warden Miles' "admission" that Defendants acted "due to the affidavit." (Compl. at 13, ¶ 24; Objs. at 5.)  But the "admission" to which he refers consists of Warden Miles explaining that the information in the Affidavit, in which Munt expressed a fixation with a corrections officer and "elaborated" on his relationship with her, presented a security risk to the facility and a safety risk to the officer.  (Norton Aff., Ex. 4 [Doc. No. 51-1 at 12] (May 16, 2018 Memo from Miles to Munt).)  This statement, far from being an "admission" of unlawful conduct, is consistent with Defendants' position.  And while Munt further states in his Objections that "Warden Miles admitted that the actions were taken due to my affidavit and that they would do so again if I was going to file something they didn't like," (Objs. at 7), the Complaint does not allege a threat of future adverse action, nor does the May 16 Memo contain any such statement.

Munt also highlights the temporal proximity of his efforts to file the Affidavit in the habeas action and the confiscation of the Affidavit, his placement in segregation, and transfer. (Objs. at 7–8.)  While temporal proximity can be used to support claims of retaliation, particularly in the context of employment law, *see, e.g.*, *Kipp v. Mo. Hwy. & Transp.*

Munt also argues that because his state court habeas petition challenged the underlying discipline for the earlier love letter, it was *necessary* for him to address the purported romantic relationship in the Affidavit. (Objs. at 3; Compl. at 14, ¶ 26.) To some extent, his habeas filings would likely refer to the DOC's stated explanation for the underlying discipline. But Ms. Norton attests that Munt's Affidavit went far beyond outlining basic underlying facts, expressing a "fixation" with the corrections officer. (Norton Aff. ¶ 5.) As reflected in the incident report, the Affidavit stated, "'Officer [ ] has shown she will not let our relationship get in the way of her duty . . . . She is the only good and pure thing . . . . I think we both liked having someone to talk to without any of the evil of this place . . . . She is the only light, and I trust and respect and admire her . . . . I did not socialize before her and have no desire to talk to anyone else.'" (*Id.*, Ex. 2 [Doc. No. 51-1 at 3] (Incident Rpt.).) Again, Munt does not plausibly counter Norton's sworn explanation for the adverse actions.[8]

---

*Com'n*, 280 F.3d 893, 897 (8th Cir. 2002), temporal proximity here cannot overcome the significant deficiencies of Munt's claim.

In addition, Munt argues that Defendants' stated motivation for their actions—that Munt's professed romantic feelings created a security risk—is belied by DOC policy and practice. (Objs. at 6.) The Court rejects this argument. Under state rules applicable to the DOC, "sexual misconduct" includes "acts between staff members and inmates." Minn. R. 2911.0200, subp. 65b (2019). Moreover, Minnesota criminalizes sexual conduct between correctional employees and inmates. Minn. Stat. §§ 609.344(m), 609.345(m). To the extent Munt contends that the DOC encourages such relationships, in practice, (Objs. at 6), the DOC previously disciplined him for his professed romantic feelings for, and purported relationship with, a corrections officer.

[8] Munt argues that any "security concern" was merely an after-the-fact justification for Defendants' impermissible actions, (Objs. at 9), but Ms. Norton prepared the incident

Further, where the record shows that the prisoner violated offender rules and displayed a pattern of misconduct, the prisoner cannot establish a but-for motive. *See Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (holding that prisoner could not meet the but-for test based on his repetitive misconduct, even where the filing of his lawsuits was a factor in his transfer); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1026–27 (8th Cir. 2012) (finding transfer was not retaliatory where plaintiffs acknowledged that they violated rules which resulted in transfer). Munt asserts that *Ponchik* is distinguishable because it involved a pattern of repeated conduct that supported a prison transfer, whereas here, he argues, Defendants transferred him based on a single incident involving the Affidavit. (Objs. at 6.) But prison officials previously disciplined Munt for the November 2017 love letter, and both Norton and Warden Miles found that in the Affidavit, Munt continued to express romantic feelings for the same corrections officer, creating a continued security concern. A security concern is a legitimate reason for a prison transfer. *See Rentschler v. Kaiser*, No. 95-1977, 72 F.3d 133, 1995 WL 732795, at * 2 (8th Cir. Dec. 12, 1995) (per curiam) (finding that even if prison's decision to transfer prisoner was motivated in part by his role in a lawsuit, he failed to demonstrate that he would not have been transferred but for the alleged retaliation, given prison's legitimate security concerns).

Nor does Munt plausibly allege retaliation based on Defendants' ancillary actions in packing and shipping his materials prior to his transfer. Ms. Cox, a corrections officer, acknowledges that she inventoried Munt's materials, listing the items on a Property

---

report the same day that Munt asked for photocopies of the Affidavit. (Norton Aff., Ex. 2 (Incident Rpt.).)

Disposition Form. (Cox Aff. ¶ 5.) But even assuming the truth of Munt's allegations of lost or disorganized material, he fails to plausibly allege that his effort to access the courts through his habeas petition was the actual motivating factor for this conduct. Although Munt refers to a retaliatory conspiracy to stymie his habeas petition, (Compl. at 14, ¶ 26), he fails to allege that Cox was even aware of the Affidavit and his habeas petition.[9] Munt's allegations of a conspiracy are too speculative and conclusory to support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (stating that allegations of retaliation must be more than speculative and conclusory.)

Also, while Munt refers to "lost" papers, it is not clear what was lost, if anything, as Munt also alleges that transmitted papers were merely not organized in the same manner as they were prior to transfer. (Compl. at 16, ¶ 34.) Further, in his request for relief, Munt asks that the Court order Defendants to "ship back in **all** of his property that was shipped out." (*Id.* at 25, ¶ 29) (emphasis in original). Ms. Cox explains that documents marked as legal papers were placed in a separate bin and sent to MCF-Oak Park Heights. (Cox Aff. ¶ 6.) As to papers that were "shipped out," presumably, outside of the DOC, Munt designated a family member to receive the documents. (*Id.*, Ex. 1 (Property Disposition Form).) These allegations are simply too vague to support a claim of retaliation.

---

[9] Similarly, Munt fails to allege how Defendants who allegedly denied him legal resources in segregation, or refused to respond to his kites regarding segregation, knew of the Affidavit and Munt's plan to use it in a habeas petition. Nor does he adequately allege Defendants' personal involvement with respect to these adverse actions that are related to his placement in segregation.

For all of the foregoing reasons, the Court finds that Munt fails to plausibly allege that the exercise of his constitutional right of access to the courts was the but-for motivation behind his placement in segregation, transfer, and related adverse actions. Even if it was *a* factor in Defendants' actions, Munt does not dispute that he expressed his romantic feelings about the corrections officers in the Affidavit, for which he had previously been disciplined. Given Defendant's security-based reasons for their adverse actions, which are embraced by the Complaint, Munt fails to plausibly allege that denying him access to the courts was *the* motivating factor for Defendants' actions. *Goff*, 7 F.3d at 737. Accordingly, he fails to state a claim for retaliation upon which relief can be granted.

### D. Separate Claim for Access to Courts

The Court need not consider whether Munt has plausibly alleged a separate claim for denial of access to the Courts, given Munt's clarification that his Complaint contains no such claim. (Objs. at 2, 12.) However, because Munt asserts in his Objections that he intends to amend the Complaint at some future time to include the claim, (Objs. at 13), the Court briefly addresses it.

To assert a claim for denial of access to the courts, a plaintiff must show that a defendant intentionally restricted court access and the plaintiff suffered an actual injury caused by the defendants. *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). To show an actual injury, a prisoner must show that a non-frivolous legal claim was frustrated or impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). In the Complaint, Munt alleges that he planned to file the Affidavit in his state court habeas petition, challenging the underlying discipline that Defendants imposed for the November 2017 love letter. (*See*

Compl. ¶ 1.) Magistrate Judge Rau properly observed, however, that Munt suffered no actual injury from the seizure of the Affidavit, (R&R at 8–10), as the Minnesota Court of Appeals affirmed the dismissal of his habeas petition as "frivolous or malicious" on two bases, including mootness. *Mun*t, 2018 WL 6165501, at * 1. The Court of Appeals found his petition moot because at the time Munt filed it, he was challenging a penalty (segregation) that he had already served, and the Court found the petition failed on the merits, as the district court properly denied Munt's in forma pauperis request. *Id*. Munt did not lose on his habeas petition because of Defendants' alleged conduct. *White*, 494 F.3d at 680. He lost because the habeas petition was moot and without merit. *Mun*t, 2018 WL 6165501, at *1.

Similarly, with respect to Munt's alleged lack of access to legal materials while Defendants placed him in segregation from March 1–8, 2018, he fails to identify any actual injury. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (noting that a prisoner must show that prison staff's conduct prevented him from litigating a claim, not merely making litigation less convenient). He did, in fact, file his state court habeas petition. *See Munt*, 2018 WL 6165501, at *1. Moreover, as a matter of law, an offender does not have the right to unimpeded access to the courts, but rather, only the right of meaningful access. *See Lewis*, 518 U.S. at 351. The ability to request additional time precludes a finding of actual injury. *See Beaulieu*, 690 F.3d at 1047. Furthermore, prisons can impose additional limitations on prisoners who are placed in administrative or disciplinary segregation, without violating the prisoners' constitutional rights. *See McMaster v. Pung*, 984 F.2d 948, 952–53 (8th Cir. 1993). And absent a systemic denial, "a successful denial-of-access claim

requires a showing of prejudice." *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994). Munt alleges that while in segregation, he lacked access to envelopes, his address book, and his legal materials, and could not visit the library. (Compl. at 10, ¶ 10.) After his transfer to MCF-Oak Park Heights, he alleges that it took time for him to obtain envelopes and visit the law library, he still did not have all of his legal materials, and he had to file pleadings by hand. (*Id.* at 12, ¶ 17.) As Defendants note, however, such allegations fail to allege a systemic denial of access. *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002) (noting that denial of access claim fails where the opportunity to litigate is not "lost for all time, . . . but only in the short term.").

Munt filed no motion to amend his Complaint to assert a standalone access to courts claim, nor did he provide a proposed amended pleading in response to Defendants' motion to dismiss. However, even if he did, any such amendment would be futile because the Minnesota Court of Appeals found that his habeas petition had "no arguable basis in law or fact." *Munt*, 2018 WL 6165501, at *1. A district court may deny a motion to amend a complaint when such an amendment would be futile, as is the case here. *Plymouth Cty., Ia. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

### E. Personal Involvement

Munt objects to the magistrate judge's finding that he failed to sufficiently allege the personal involvement of former DOC Commissioner Roy. (Objs. at 15.) He argues that the Commissioner is responsible for DOC policy. (*Id.*) As the magistrate judge observed, in order to state a § 1983 claim, a plaintiff must allege the Defendants' personal involvement or responsibility for the alleged constitutional violations. *Ellis v. Norris*, 179

F.3d 1078, 1079 (8th Cir. 1999). The Court agrees with the magistrate judge that the Complaint does not sufficiently allege the former Commissioner's personal involvement, nor identify the "policy" that Munt challenges.

### F. Qualified Immunity

Munt also objects to the magistrate judge's findings on qualified immunity. (Objs. at 16.) Qualified immunity is an immunity from suit for money damages that is only available to government employees sued in their individual capacities. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (citing *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016)) (internal citation omitted).

Munt sues each Defendant here in both their individual and personal capacities. (Compl. at ¶¶ 1–8.) Qualified immunity depends upon whether the plaintiff has stated a plausible claim for violation of a constitutional right and whether that right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). The magistrate judge found that to the extent that Munt has failed to state a constitutional violation, Defendants are entitled to qualified immunity, and to the extent that he has failed to meet his pleading burden, his pleading deficiencies hinder the Court's ability to determine whether qualified immunity applies. (R&R at 11.)

In his Objections, Munt argues that the law is clearly established and he has sufficiently alleged a prima facie case of retaliation (Objs. at 16.) He contends that, "at worst," there is a factual dispute. (*Id.*) The Court disagrees and finds that because "the relevant facts do not make out a constitutional violation at all," Defendants are entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (finding that courts need not engage in "clearly established" prong of qualified immunity analysis where the relevant facts fail to make out a constitutional violation).

## G. State Law Claims

The magistrate judge noted that while Munt alludes to state law claims, he does not adequately plead them. (R&R at 12.) Accordingly, the magistrate judge recommended that the Court decline to exercise jurisdiction over any state law claims, as Munt's federal claims fail. *See* 28 U.S.C. § 1367(c)(3).

Munt fails to identify the state law claims in question, nor does he provide any insight in his Objections. Rather, he merely states, "Magistrate dismisses any state law claims based on the dismissal of the federal claim. As that was erroneous, so is his holding dependent on it." (Objs. at 17.) This ground of objection is overruled. Again, because Munt fails to identify the claims in question, and his federal claims fail, the Court declines to exercise supplemental jurisdiction over state law claims, to the extent they exist.

## H. Requested Relief

The magistrate judge observed that Munt may not obtain damages against state officials in their official capacities, nor can he obtain injunctive relief against officials in their individual capacities. (R&R at 12.) Munt does not appear to object to this statement,

but instead merely asserts that in his Complaint, his requested relief is clear. This ground of objection is moot.

## I. Dismissal With or Without Prejudice

Munt objects to the magistrate judge's recommendation that this case be dismissed with prejudice. (Objs. at 20.) Dismissal with prejudice may be appropriate if amending the pleadings would be futile or if a party fails to amend or clarify the amended language. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). In contrast, where a plaintiff seeks leave to amend to cure deficiencies, dismissal with prejudice may be improper. *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995).

The magistrate judge found Munt's claims legally deficient, nor has Munt sought leave to amend. Moreover, some of the same allegations here were also present in *Munt v. Roy*, 17-cv-5215—specifically, Munt's allegations that, while in segregation, he lacked access to legal materials, paper, and pencils, leading to the "delayed" filing of a habeas petition. *See Munt*, 2019 WL 157289, at *1. In *Munt v. Roy*, the Court found that Munt failed to identify the underlying cause of action, failed to identify the case in question, and failed to indicate how he was prejudiced. *Id.* at *5. Similarly, in the earlier case, Munt challenged the DOC's two-bin policy pertaining to items of personal property, arguing that it made him unable to refer to previously-filed documents. *Id.* The Court found that Munt's claims were fatally deficient. *Id.* at *6.

Munt's claims here are similarly deficient, and the Court finds that amending pleadings would be futile. Accordingly, this case is dismissed with prejudice.

**J. Stay**

Munt further objects to the magistrate judge's denial of his request for a stay based on a pending appeal to the Eighth Circuit. (Objs. at 17–20.) He contends that "[t]here is currently an appeal before the 8th Circuit involving Judge Nelson and Magistrate Rau violating the mandatory disqualification under 28 U.S.C. § 455(5)(iv)." (R&R at 13–14) (citing Doc. No. 42 at 1.)

While Defendants' Motion to Dismiss is a dispositive matter, for which this Court reviews the magistrate judge's recommendation de novo, Munt's request for a stay is a non-dispositive matter, for which the magistrate judge's decision is subject to "extremely deferential" review.[10] *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). The Court will reverse such an order only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3).

"'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir.2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). As the magistrate judge observed, courts are to issue stays only "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Among the factors courts consider are maintaining control of the court's docket, conserving judicial resources, and providing

---

[10] While the magistrate judge ruled on this issue in the form of a recommendation, the Court considers Munt's request for a stay to be a nondispositive matter. In any event, even if this Court were to review the magistrate judge's ruling on a de novo standard of review, it would reach the same result.

for the just determination of pending cases. *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 964–65 (D. Minn. 1998). The party seeking a stay bears the heavy burden of establishing the need for a stay, which often involves demonstrating a particular hardship if the party is required to go forward. *Kreditverein der Bank Austria v. Nejezchleba*, 477 F.3d 942, 945 n.3 (8th Cir. 2007) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In deciding whether to issue a stay, courts are to "weigh competing interests" of the parties. *Lunde v. Helms*, 898 F.2d 1343, 1354–55 (8th Cir. 1990).

The magistrate judge properly weighed the competing interests here, finding that the equities weighed in favor of Defendants. (R&R at 14.) He noted that Munt fails to point to any specific hardship or inequity he will suffer if he is required to move forward with this case, currently assigned to the undersigned judge and Magistrate Judge Rau. (*Id.*) He further noted Defendants' interest in moving this case toward resolution. (*Id.*) In the interest of judicial economy, and to mitigate hardships that Defendants may suffer from an ongoing stay, he recommended the denial of a stay. (*Id.*)

In his Objections, Munt argues that the magistrate judge erroneously "acted like it was [a request for] an indefinite stay," but Munt anticipates a ruling from the Eighth Circuit "in the near future," followed by, "at most," a petition for certiorari to the Supreme Court. (Objs. at 18.) He continues to argue that the undersigned judge and the magistrate judge are "two key witnesses," making their designation on this case improper. (*Id.* at 17–18.) As to his hardship if a stay is not granted, he asserts that "in illegally acting on his other case, Judge Nelson caused a strike to be issued" under the PLRA. (*Id.* at 20.)

The Court is unpersuaded by Plaintiff's arguments and finds Munt does not meet the heavy burden necessary to warrant a stay. The appeal process can be lengthy and the hardship to Defendants if a stay were granted outweighs the hardship to Plaintiff if it is denied. As to his "strike," Munt appears to refer to the following provisions applicable to prisoners proceeding in forma pauperis:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915. The Court does not consider the prospect that Munt may obtain a strike to sway the balance of the equities here. The Court finds that the magistrate judge did not err in his recommendation to deny a stay. Munt's request is denied.

## III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Doc No. 50] to the Report and Recommendation is **OVERRULED**.

2. The June 13, 2019 Report and Recommendation [Doc. No. 48] is **ADOPTED**.

3. Defendants' Motion to Dismiss [Doc. No. 24] is **GRANTED**;

4. Defendant Hammer's Motion to Dismiss or Amend the Caption [Doc. No. 32] is **GRANTED**;

5. Plaintiff's Request for a Stay [Doc. No. 42] is **DENIED**; and

6. Plaintiff's Complaint [Doc. No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 13, 2019                                <u>s/Susan Richard Nelson</u>
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge